UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY A. DELONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01210-JMS-DKL |
| | ) | |
| NANCY A. BERRYHILL, *Acting Commissioner* | ) | |
| *of the Social Security Administration*, | ) | |
| | ) | |
| Defendant. | ) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Timothy DeLong applied for disability insurance benefits from the Social Security Administration ("SSA") on February 11, 2010, alleging an onset date of June 6, 2008. [Filing No. 12-4 at 7.] His application was denied initially on April 20, 2010, and upon reconsideration on July 28, 2010. [Filing No. 12-4 at 7.] Administrative Law Judge ("ALJ") Angela Miranda held a video hearing on August 23, 2011, and issued a decision on November 29, 2011, concluding that Mr. DeLong was not entitled to receive benefits. [Filing No. 12-4 at 7-18.] On October 18, 2012, the Appeals Council vacated and remanded the ALJ's decision after it received additional evidence. [Filing No. 12-4 at 22-23.] On September 24, 2013, the ALJ held another video hearing, [Filing No. 12-2 at 52], and issued a decision on August 26, 2014, concluding once again that Mr. DeLong was not entitled to receive benefits. [Filing No. 12-2 at 32-46.] The Appeals Council denied review on March 14, 2016, [Filing No. 12-2 at 3], rendering the ALJ's decision the final decision of the Commissioner of the SSA (the "Commissioner"), [Filing No. 12-2 at 32-46]. Mr. DeLong then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision. [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. DeLong was born in 1964, [Filing No. 12-2 at 65], has completed some college, [Filing No. 12-2 at 68], and has previous work experience as a warehouse worker, [Filing No. 12-2 at

3

44].¹ Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on August 26, 2014, determining that Mr. DeLong was not entitled to receive disability benefits. [Filing No. 12-2 at 32-46.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. DeLong had not engaged in substantial gainful activity² since the alleged onset date. [Filing No. 12-2 at 35.]

- At Step Two of the analysis, the ALJ found that Mr. DeLong suffered from the following severe impairments: "(1) back impairments variously assessed as dextroscoliosis, chronic compression deformities of T10 and T11, levoscoliosis, disc degeneration of T12-L1 and L1-L2, and scoliosis; (2) cervical spine dysfunction described as mild cervical spondylosis; (3) mild developmental dysplasia of the right hip and sciatica; and (4) mental impairments assessed as anxiety, depression, and memory loss likely secondary to depression and anxiety." [Filing No. 12-2 at 34.]

- At Step Three of the analysis, the ALJ found that Mr. DeLong did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 36.]

- After Step Three but before Step Four, the ALJ found that Mr. DeLong has the RFC to perform light work with the following postural and mental limitations: "[Mr. DeLong] has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry

---

¹ Mr. DeLong provided a detailed description of his medical history, [Filing No. 21], and the Commissioner did not dispute it, [Filing No. 29]. Because that discussion implicates sensitive and otherwise confidential medical information concerning Mr. DeLong, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

² Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

10 pounds. [He] has the capacity to frequently push and pull up to the weight capacity for lifting and carrying. [He] has the capacity to stand and walk 6-8 hours in an 8-hour workday. . . . [Mr. DeLong] has the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps. The evidence does not establish that [he] has any limitations in the ability to balance . . . [and] there are no clinical signs or diagnostic results establishing any medically determined impairment of the hands or upper extremities. . . . [Mr. DeLong] has no limitations in manipulative abilities. . . . [M]entally [Mr. DeLong] has the capacity to understand, remember, and carry out simple, routine tasks. In doing so, [Mr. DeLong] has the capability to use common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. [Mr. DeLong] has the capacity to appropriately interact with supervisors, coworkers, and the general-public. [He] has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place." [Filing No. 12-2 at 38-39 (emphasis omitted).]

- At Step Four of the analysis, the ALJ found that Mr. DeLong is unable to perform any past relevant work. [Filing No. 12-2 at 44.]

- At Step Five of the analysis, the ALJ found that considering Mr. DeLong's age, education, work experience, and RFC, there are jobs in the national economy that Mr. DeLong can perform, such as a fast food worker, cashier, and sales attendant. [Filing No. 12-2 at 45.]

Mr. DeLong asked the Appeals Council to review the ALJ's decision, but that request was denied on March 14, 2016, [Filing No. 12-2 at 3], rendering the ALJ's decision the Commissioner's final decision, [Filing No. 12-2 at 32-46]. Mr. DeLong then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision. [Filing No. 1.]

### III.
#### DISCUSSION

Mr. DeLong raises several issues on appeal, and the Court will address them as follows: (1) whether the ALJ improperly evaluated the opinions of the psychological consultative examiner and treating physician, [Filing No. 21 at 24-25]; (2) whether the ALJ failed to adequately instruct the vocational expert regarding Mr. DeLong's moderate limitations of concentration, persistence, and pace, [Filing No. 21 at 28]; (3) whether the ALJ erred in her credibility analysis, [Filing No. 21 at 30]; (4) whether the ALJ improperly dismissed the testimony of Mr. DeLong's friend, [Filing No. 21 at 27]; (5) whether the ALJ erred when she found that Mr. DeLong's amnestic disorder was not a severe impairment, [Filing No. 21 at 18]; and (6) whether the Appeals Counsel erred when it failed to "exhibit or associate" with Mr. DeLong's record the post-hearing evidence that he submitted, [Filing No. 21 at 15].

**A. Opinion Evidence**

*1. Consultative Examiner's Opinion*

Mr. DeLong argues that the ALJ erroneously weighed the opinion of psychological consultative examiner Dr. Robert Blake with respect to Mr. DeLong's "severe processing and memory" problems. [Filing No. 21 at 23.] Mr. DeLong argues that the ALJ's reason (dismissing Dr. Blake's opinion because the testing was compromised by Mr. DeLong's lack of understanding the directions) is flawed because he claims that such evidence is linked to "severe processing and

memory problems." [Filing No. 21 at 24.] He also claims that the ALJ's other explanations that Mr. DeLong was able to care for his son and engage in amateur radio broadcasting are not good reasons to reject Dr. Blake's opinion. [Filing No. 21 at 24-25.]

In response, the Commissioner argues that the ALJ considered all the opinions, adequately assigned great weight to the state agency psychologist's opinion, and properly noted Mr. DeLong's propensity to exaggerate in both of Mr. DeLong's mental and physical examinations. [Filing No. 29 at 7.] The Commissioner claims that the ALJ "reasonably considered that Dr. Blake's conclusions were not supported by his own examination findings." [Filing No. 29 at 8.] The Commissioner summarizes the ALJ's discussion of Dr. Blake's assessment, notes that the ALJ provided adequate reasons for rejecting his opinion, and argues that courts do not reweigh evidence on appeal. [Filing No. 29 at 8-9.]

In reply, Mr. DeLong argues that the "Commissioner's characterization of what Dr. Blake actually stated is simply not true." [Filing No. 30 at 5.] He reiterates that Dr. Blake noted that Mr. DeLong's difficulty with directions "was generally indicative of the level of his problem" and that Dr. Blake did not find Mr. DeLong's memory invalid. [Filing No. 30 at 5.] Mr. DeLong further claims that "the ALJ overstated his daily activities in finding them inconsistent with Dr. Blake's opinion," and that she failed to build a logical and accurate bridge when she mischaracterized Dr. Blake's opinion and overstated Mr. DeLong's care of his son and participation in hobbies. [Filing No. 30 at 6-7.]

Generally, an ALJ will give more weight to an opinion of a source who has examined the claimant than to the opinion of a source who has not examined the claimant.[3] 20 C.F.R. § 404.1527(c)(1). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record. . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir. 2002).

The ALJ discussed Dr. Blake's findings with regard to Mr. DeLong's mental impairments. [Filing No. 12-2 at 41.] The ALJ then explained that she gave little weight to Dr. Blake's opinion with respect to his assessment that Mr. DeLong showed "severe processing and memory problems," because Mr. DeLong's "testing appeared to be compromised by his lack of understanding of the test directions," and his hobby of participating in amateur radio broadcasting and activity caring for a disabled child were at odds with his opinion. [Filing No. 12-2 at 42.] These are not adequate reasons to reject Dr. Blake's opinion. First, Dr. Blake noted in his opinion that Mr. DeLong's difficulty following instructions was likely attributed to his difficulty with his memory. Specifically, Dr. Blake pointed out that Mr. DeLong was consistent with his wrong answers demonstrating that within his own logic, he may have performed higher on the sub-test, and that "the fact that he could not understand the instructions after multiple presentations suggests that his extremely low score on this item is generally indicative of the level of his problem. . . ." [Filing No. 12-9 at 78.] Moreover, the ALJ does not explain how Mr. DeLong's ability to care for his son and engage in amateur radio broadcasting refutes that he has issues with his processing or

---

[3] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01. The new regulations indicate that SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source]. . . ." 82 Fed. Reg. 5844-01. Because Mr. DeLong applied for disability benefits before March 27, 2017, these changes will not apply to the review of his claim.

8

memory. Another troubling aspect of the ALJ's assessment is that she gave significant weight to the state agency psychological consultant's opinion and only explained that the "consultative examinations revealed a higher level of functioning than [Mr. DeLong] alleged and the 2013 examinations appeared to have been compromised due to issues with patient effort." [Filing No. 12-2 at 41.] As noted above, typically, a consultative examiner's opinion receives greater weight because they examine the claimant, whereas a state agency physician merely reviews the medical records. While the Court does not indicate that the ALJ should have given greater weight to Dr. Blake's opinion, it finds that the ALJ should have given adequate reasons for discounting the opinion. Accordingly, this issue requires remand.

2. *Treating Physician's Opinion*

Mr. DeLong argues that the ALJ failed to give "good reasons" for not affording controlling weight to the opinion of treating physician Dr. Seth Banks. [Filing No. 21 at 25.] He first argues that the ALJ's explanation that Dr. Banks used "vague" words like "moderate" and "severe" to describe Mr. DeLong's mental impairments is not an adequate reason to reject the opinion, given that Dr. Banks essentially adopted Dr. Blake's opinion. [Filing No. 21 at 26.] Mr. DeLong further points out that the ALJ's explanation that Dr. Banks' request for a functional capacity examination demonstrates he was unsure of Mr. DeLong's precise loss of functioning is not an adequate reason to reject Dr. Banks' opinion. [Filing No. 21 at 26.] Lastly, he argues that the ALJ's reason to reject Dr. Banks' opinion because he mistook Dr. Blake's examination to be a more comprehensive neuropsychological examination is also not a "good reason." [Filing No. 21 at 26-27.]

In response, the Commissioner claims that the ALJ gave "good reasons" to reject Dr. Banks' opinion. [Filing No. 29 at 9.] In addition, the Commissioner claims that the ALJ was not required to give Dr. Banks' opinion controlling weight because he was a general physician, and

9

that Dr. Banks only recommended conservative treatment to address Mr. DeLong's symptoms. [Filing No. 29 at 9-10.]

In reply, Mr. DeLong reiterates that the ALJ's reasons to reject Dr. Banks' opinion have "absolutely nothing to do with the mental limitations assessed by Dr. Banks" and are not considered good reasons. [Filing No. 30 at 6.]

Under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances. *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). Section 404.1527(c)(2) provides that "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Minnick*, 775 F.3d at 938. If the ALJ opts not to give a treating physician's opinion controlling weight, she must apply the factors under 20 C.F.R. § 404.1527(c)(2)-(6).

As noted by Mr. DeLong, the ALJ gave three reasons for giving "very limited weight" to Dr. Banks' opinion. [Filing No. 12-2 at 42.] She first indicated that Dr. Banks does not provide a detailed or quantifiable assessment, and that he used vague terms like "moderate" and "severe." [Filing No. 12-2 at 42.] Next, she explains that the fact that Dr. Banks requested a functional capacity examination demonstrates that he was unsure of Mr. DeLong's precise loss of functioning. [Filing No. 12-2 at 42.] Lastly, the ALJ points out that Dr. Banks erroneously found that "the first consultative psychological examination was a more detailed 'neuropsychological' examination rather than a general mental statute examination." [Filing No. 12-2 at 42.] The Court

10

agrees with Mr. DeLong that the ALJ failed to give adequate reasons for giving little weight to Dr. Banks' opinion. As noted above, the ALJ must give controlling weight to the treating physician's opinion if it is well-supported by medically acceptable evidence and not inconsistent with the record, and the ALJ's explanation rejecting Dr. Blake's opinion does not explain whether or to what extent Dr. Banks' opinion is inconsistent with or not supported by the record. Instead, the ALJ makes various assumptions about Dr. Banks' findings. For instance, the ALJ's reason to reject Dr. Banks' opinion because he used vague terms like "moderate" and "severe" to describe Mr. DeLong's impairments is unavailing, given that such terminology is often used by physicians in Social Security assessment forms to describe a claimant's impairments. Moreover, the ALJ's other reason to reject Dr. Banks' opinion – because he requested a functional capacity examination – is also illogical since the ALJ also noted that Dr. Banks was a general practitioner and is therefore not so qualified to conduct this type of examination. The Court does not conclude that Dr. Banks' opinion should be given controlling weight. But if the ALJ is going to afford it lesser weight, the ALJ's assessment must be done in accordance with the Social Security regulations. The Court therefore remands this matter based on this issue.

**B. Concentration, Persistence, and Pace**

Mr. DeLong argues that the ALJ failed to take into account "her own findings of moderate limitations of concentration, persistence, and pace in her assigned [RFC] and her Step Five hypothetical questions to the vocational expert." [Filing No. 21 at 28.] He claims that the ALJ "apprised the vocational expert that [Mr. DeLong] did not have limitations in these areas at all." [Filing No. 21 at 29.] He further claims that this omission "resulted in uninformed testimony and Step Five findings not supported by substantial evidence." [Filing No. 21 at 29.]

11

In response, the Commissioner argues that the ALJ reasonably relied upon state agency psychologist Dr. Kenneth Lovko's opinion, "who translated [Mr. DeLong's] moderate difficulties in maintaining concentration, persistence or pace into a mental [RFC] opinion." [Filing No. 29 at 11.] The Commissioner argues that Mr. DeLong "makes a series of arguments as to why Dr. Lovko's opinion does not adequately account for [Mr. DeLong's] moderate limitations in concentration, persistence and pace." [Filing No. 29 at 12.] He further claims that Mr. DeLong does not explain "what additional limitations he believes he require[d]" in the hypotheticals to the vocational expert, and that Mr. DeLong's attorney had the opportunity to question the vocational expert during the hearing "if he believed the ALJ's hypothetical question was inaccurate." [Filing No. 29 at 12.]

In reply, Mr. DeLong claims that the Commissioner mischaracterizes his argument and reiterates that the RFC "assessed by the ALJ does not reflect the moderate limitations of concentration, persistence and pace that the state agency psychologist opined and that [the] ALJ [] adopted." [Filing No. 30 at 1-2.] He further claims that "simple, routine tasks" do not relate to someone's ability to sustain concentration, persistence, and pace, and that the RFC contains capabilities that are not reflective of the limitations found by Dr. Lovko. [Filing No. 30 at 3.]

The ALJ's RFC assessment and the hypothetical questions posed to the vocational expert "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Among the mental limitations that must be considered are deficiencies in concentration, persistence, or pace. *Id.* The Seventh Circuit has repeatedly held that restricting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an impairment in concentration." *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *see also*

12

*Varga*, 794 F.3d at 814-15 (noting that the Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions" did not account for "moderate limitation in concentration, persistence and pace").

The Seventh Circuit does not require the hypothetical questions presented to the vocational expert to explicitly use the words "limitations in concentration, persistence, or pace," but there are only limited circumstances when the absence of such language is sufficient. *See O'Connor-Spinner*, 627 F.3d at 619. First, a hypothetical question may be sufficient if the record shows that the vocational expert independently reviewed the claimant's medical record or heard testimony directly addressing the claimant's limitations. *Id*. Second, the hypothetical may be sufficient when the language specifically excluded tasks that someone with the claimant's limitations could not do. *Id*. Third, the hypothetical may be sufficient when it mentions the claimant's underlying conditions that limit his concentration, persistence, or pace. *Id*. at 620.

Both parties agree that Dr. Lovko's opinion, which the ALJ afforded great weight, provides that Mr. DeLong has moderate limitations of concentration, persistence, and pace, [Filing No. 12-10 at 20], and that under Step Two of the Analysis, the ALJ acknowledged this limitation, [Filing No. 12-2 at 37]. Specifically, Dr. Lovko noted that Mr. DeLong was moderately limited under the following categories: "[t]he ability to understand and remember detailed instructions," [Filing No. 12-10 at 24]; and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," [Filing No. 12-10 at 25]. Both parties also acknowledge that

during the hearing, the ALJ failed to include in the hypothetical to the vocational expert Mr. DeLong's moderate limitations of concentration, persistence, or pace. [*See* Filing No. 12-2 at 91-97.] Mr. DeLong argues that this is reversible error and the Commissioner disagrees. Since the ALJ failed to instruct the vocational expert of this limitation, the Court will use the standard above to determine whether the ALJ committed reversible error.

First, the record does not reveal whether the vocational expert had the opportunity to review Mr. DeLong's records. During the hearing, the ALJ never asked the vocational expert whether he reviewed the records, and the parties do not indicate whether he did. Given this, the Court assumes that the vocational expert did not review the records. Second, the variations of the hypothetical that the ALJ posed to the vocational expert resulted in tasks that someone with moderate limitations of concentration, persistence, or pace is unable to do. In the hypothetical that the ALJ incorporated in the RFC analysis, the ALJ asked the vocational expert in part whether there are jobs for someone with "the capacity to understand, remember, and carry out . . . simple, routine, tasks . . . [where] the individual has the capacity to use commonsense understanding." [Filing No. 12-2 at 92-93.] The Seventh Circuit has held that "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace," and that "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (internal and external citations omitted). Lastly, the RFC does not contain restrictions necessary for someone with moderate limitations of concentration, persistence, or pace, given that the ALJ incorporated in the RFC analysis the limitations of someone who can engage in "simple, routine tasks." [*See* Filing

14

No. 12-2 at 39.] On remand, the ALJ must properly instruct the vocational expert of Mr. DeLong's moderate limitations of concentration, persistence, and pace.

### C. Other Issues

As discussed above, the Court has found that remand is necessary based on the first two issues. In the interest of thoroughness, the Court will briefly discuss Mr. DeLong's other arguments.

With respect to the credibility analysis, Mr. DeLong claims that the ALJ made several pronouncements that were either patently false or failed to tell the whole story. [Filing No. 21 at 30.] He further claims that there are instances in the record that note that Mr. DeLong failed to put forth the full effort during testing, but that the examining source attributed those instances to his mental condition or personality. [Filing No. 21 at 30-31.] As examples, Mr. DeLong cites to examination records of Mr. DeLong from Dr. Stephen Herman and Dr. Blake. [Filing No. 21 at 30-31.] A credibility determination by the ALJ is given "considerable deference." *Prochaska,* 454 F.3d at 728. The ALJ's credibility determination will be reversed only if she fails to base the determination on grounds that are reasonable or supported by the evidence of record. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The Court agrees that the ALJ characterized the record as though Mr. DeLong put forth a poor effort during his examinations, but as noted by Mr. DeLong, certain medical examiners – like Dr. Blake – attributed this behavior to his mental condition. On remand, the ALJ must accurately assess the medical examinations that discuss Mr. DeLong's mental impairments and give a proper credibility analysis.

Mr. DeLong next claims that the ALJ improperly dismissed the testimony of Richard Stark – Mr. DeLong's friend who testified at the administrative hearing that Mr. DeLong's memory was getting worse – because the ALJ noted that the last time he had contact with Mr. DeLong was over

a year ago. [Filing No. 21 at 27.] Mr. DeLong points out that Mr. Stark actually testified that he spoke with Mr. DeLong over amateur radio broadcasting five to six times per day. [Filing No. 21 at 27-28.] An ALJ may consider evidence from non-medical sources, "such as spouses, parents, friends, and neighbors," and should "explain the weight given . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P (Aug. 9, 2006). The Court finds that the ALJ improperly gave little weight to Mr. Stark's testimony when she claimed that it was because Mr. Stark was in contact with Mr. DeLong a year ago. In fact, Mr. Stark testified that he was in contact with Mr. DeLong via telephone at least five to six times per day, but that the last time he saw Mr. DeLong *in person* was a year ago. [Filing No. 12-2 at 90.] On remand, the ALJ should give a proper account of Mr. Stark's testimony.

Next, Mr. DeLong argues that the ALJ erred when she found that Mr. DeLong's amnestic disorder was not a severe impairment. [Filing No. 21 at 18.] He claims that the ALJ was playing doctor in making that determination because the evidence and medical sources demonstrate that he has significant cognitive impairments. [Filing No. 21 at 20.] "[I]f a plaintiff satisfies his burden of establishing that he suffers from any severe impairment, the ALJ simply must continue to step three of the analysis." *Raines v. Astrue*, 2007 WL 1455890, at *7 (S.D. Ind. 2007). "[N]o error could result solely from [the ALJ's] failure to label an impairment as 'severe'. . . . What matters is that the ALJ considers the impact of all of the claimant's impairments – severe and non-severe – on his ability to work." *Id.* Given that the ALJ found that Mr. DeLong suffered from other severe impairments at Step Two and continued with the subsequent steps of the analysis, the Court finds that the ALJ's failure to find that Mr. DeLong's amnestic disorder constitutes a severe

16

impairment is harmless error. However, whether severe or not, the ALJ must still factor limitations from Mr. DeLong's amnestic disorder into the RFC. For instance, as discussed under Section II.A.1., the ALJ did not take into account evidence regarding Mr. DeLong's severe processing and memory problems. On remand, the ALJ must review evidence related to Mr. DeLong's amnestic disorder diagnosis and discuss whether and to what extent it causes any further limitations.

Lastly, Mr. DeLong argues that the Appeals Council failed to "exhibit or associate" with the record a comprehensive neuro-psychological evaluation and other records from Indiana Neuroscience Associates from 2015 and early 2016 that Mr. DeLong submitted after the ALJ's decision. [Filing No. 21 at 15.] Mr. DeLong claims that even though the Appeals Council rejected the evidence as "non-qualifying," it was still required to include it in the record for this Court's review. [Filing No. 21 at 15-18.] Before filing its response, the Commissioner supplemented the record with these records. [*See* Filing No. 28.] Because this decision requires remand on other grounds, the Court instructs the ALJ to determine whether those records relate back to the appropriate adjudicatory period, and if they do, appropriately consider Mr. DeLong's limitations.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. DeLong benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g)(sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: July 31, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**